Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/24/2017 09:09 AM CDT

- 193 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

County of Franklin, appellant, v.
Tax Equalization and Review
Commission, appellee.
___ N.W.2d ___

Filed March 24, 2017.    No. S-16-554.

1. **Constitutional Law: Administrative Law: Taxation.** Neb. Const. art. IV, § 28, provides that the Tax Equalization and Review Commission is empowered to review and equalize assessments of property for taxation within the state.
2. **Taxation: Property: Valuation.** Neb. Rev. Stat. § 77-5022 (Cum. Supp. 2016) provides that the Tax Equalization and Review Commission shall annually equalize the assessed value or special value of all real property as submitted by the county assessors on the abstracts of assessments and equalize the values of real property that is valued by the state.
3. ____: ____: ____. The Tax Equalization and Review Commission is required to increase or decrease the value of a class or subclass of real property in any county or taxing authority or of real property valued by the state so that all classes or subclasses of real property in all counties fall within an acceptable range.
4. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
5. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

Appeal from the Tax Equalization and Review Commission. Affirmed.

Henry C. Schenker, Franklin County Attorney, for appellant.

- 194 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## I. INTRODUCTION

The Tax Equalization and Review Commission (TERC) adjusted upward by 8 percent the value of the "Land Use Grass" subclass of the agricultural and horticultural land class in Franklin County, Nebraska. Franklin County appeals. We affirm.

## II. BACKGROUND

### 1. Applicable Law

[1,2] Some background law is helpful to understand the facts presented by this appeal. Neb. Const. art. IV, § 28, provides that TERC is empowered "to review and equalize assessments of property for taxation within the state." Neb. Rev. Stat. § 77-5022 (Cum. Supp. 2016) provides that TERC "shall annually equalize the assessed value or special value of all real property as submitted by the county assessors on the abstracts of assessments and equalize the values of real property that is valued by the state."

[3] In doing so, TERC is required "to increase or decrease the value of a class or subclass of real property in any county or taxing authority or of real property valued by the state so that all classes or subclasses of real property in all counties fall within an acceptable range."[1] The acceptable range for "agricultural land and horticultural land [is] sixty-nine to seventy-five percent of actual value."[2] The median has been

---

[1] Neb. Rev. Stat. § 77-5023(1) (Reissue 2009).

[2] § 77-5023(2)(a).

- 195 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

adopted by TERC as the preferred established indicator of central tendency.[3] Median is defined by regulation as "the value of the middle item in an uneven number of items arranged or arrayed according to size; the arithmetic average of the two central items in an even number of items similarly arranged; [or] a positional average that is not affected by the size of extreme values."[4] Thus, TERC prefers that valuation data "cluster" around the median value.[5]

If TERC finds that

> the level of value of a class or subclass of real property fails to satisfy the requirements of section 77-5023, [TERC] shall issue a notice to the counties which it deems either undervalued or overvalued and shall set a date for hearing at least five days following the mailing of the notice unless notice is waived.[6]

Subsequent to such a hearing, TERC shall raise or lower the valuation of any class or subclass or real property in a county when it is necessary to achieve equalization.[7] TERC's order following such a hearing should be entered based on information provided to it at the hearing and should specify the percentage of increase or decrease and the class or subclass of real property affected.[8]

Each county's assessor and the state's Property Tax Administrator (PTA) also have certain duties relating to the valuation process. Neb. Rev. Stat. § 77-1514 (Cum. Supp. 2016) provides that the county assessor must prepare abstracts of the property assessment rolls of locally assessed property,

---

[3] 442 Neb. Admin. Code, ch. 9, § 004 (2011).

[4] *Id.*, § 002.13.

[5] *Id.*, § 002.10.

[6] Neb. Rev. Stat. § 77-5026 (Reissue 2009).

[7] Neb. Rev. Stat. § 77-5027(1) (Cum. Supp. 2016).

[8] Neb. Rev. Stat. § 77-5028 (Reissue 2009).

- 196 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

which should show the taxable value of property in the county as determined by the county assessor. These abstracts must be filed with the PTA.

As for the PTA, § 77-5027(2) provides that on or before 19 days after each county assessor files its abstracts under § 77-1514, the PTA must prepare and deliver to TERC and to each county assessor its own annual reports and opinions. Those reports and opinions

> shall contain statistical and narrative reports informing [TERC] of the level of value and the quality of assessment of the classes and subclasses of real property within the county and a certification of the opinion of the [PTA] regarding the level of value and quality of assessment of the classes and subclasses of real property in the county.[9]

In addition, the PTA may make nonbinding recommendations for consideration by TERC.[10] In compiling this information and formulating its opinion, the PTA may employ various methods as provided by law and may use sales of comparable real property in market areas similar to the county or area in question or from another county as indicators of the level of value and the quality of the assessment in a county.[11]

## 2. Valuation Actions

Franklin County assessor Linda Dallman timely filed her abstract of assessment. After receiving that abstract, the PTA filed certain reports with TERC regarding Franklin County's assessment. In those reports, the PTA made a nonbinding recommendation that Franklin County's assessment as to agricultural land for both farmland and pastureland be increased by 8 percent. In response to this nonbinding

---

[9] § 77-5027(3).

[10] § 77-5027(4).

[11] § 77-5027(5).

recommendation, TERC called for a hearing on Franklin County's valuation.

### 3. TERC Hearing

The primary issue raised in the hearing was Franklin County's valuation for grassland. Because Franklin County had relatively few sales of grassland, the use of comparable sales from other counties was necessary to determine the valuation of that subclass. Dallman and the PTA differed on what comparable sales should be used, which in turn affected the valuation of grassland.

In its valuation, the PTA used 19 sales—9 sales from within Franklin County and another 10 in comparable sales from other counties. This resulted in an overall median of 67 percent, outside the range of 69 to 75 percent set forth by § 77-5023(2)(a). In Dallman's valuation, she used 14 sales—the same 9 sales from within Franklin County and 5 comparable sales. Three of the comparable sales were used by the PTA; two were not. Dallman testified that she rejected many of the sales used by the PTA because they were more than 12 miles from Franklin County's borders and she felt that, as such, the sales were not comparable. Dallman's valuation resulted in an overall grassland median of 74.91 percent, just inside the range set forth by § 77-5023(2)(a).

Ruth Sorensen, the PTA for the State of Nebraska, testified that Dallman's decision to not use sales beyond 12 miles of Franklin County was inconsistent with the PTA's current policy, which allows the use of any comparable sale from another county so long as "the proximity to the county and the comparability to the county" is examined. Sorensen acknowledged that this policy, while adopted in January 2016, was not published until April 11, 2016. According to the record, the prior policy generally provided that sales up to 6 miles away could be utilized. But even that prior policy noted that in an instance where there were still not enough comparable sales, "[t]he

- 198 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

preferred method of correcting the deficiency is to supplement the sample with comparable sales from surrounding counties," without a limitation on distance.

Sorensen also testified that she felt the sales outside of 12 miles from Franklin County were comparable to the grassland in Franklin County. Sorensen noted that the assessors of Webster and Harlan Counties, Nebraska, agreed, as both used those sales in grassland valuations for their respective counties.

### 4. TERC's Order

Following the show cause hearing, TERC entered its written findings and order adjusting value. As to all areas except one, TERC found that statistical studies of the level of value and the quality of assessment were reliable and representative of the level of value and quality of assessment for the category in question. But as to the "land use grass" subclass of the agricultural and horticultural land class of real property not receiving special valuation, excluding timber subclass and improvements, TERC found that an adjustment was necessary.

For this subclass, TERC's order noted that the level of value was 66.61 percent of actual or fair market value, as shown by the reports and opinions of the PTA. The order stated that this level was not within the acceptable range of 69 to 75 percent, and must be adjusted upward by 8 percent to a 75-percent level of value. Franklin County appeals.

### III. ASSIGNMENTS OF ERROR

Franklin County assigns, renumbered, that TERC (1) erred by relying on statistics prepared by the PTA, including sales that should not have been considered comparable sales; (2) violated Neb. Const. art. VIII by failing to uniformly and proportionally equalize Franklin County valuations; (3) erred by adjusting the grassland value of property in Franklin County

- 199 -

Nebraska Supreme Court Advance Sheets
296 Nebraska Reports
COUNTY OF FRANKLIN v. TAX EQUAL. & REV. COMM.
Cite as 296 Neb. 193

upward by 8 percent; and (4) erred by denying its motion to reconsider.

## IV. STANDARD OF REVIEW

[4,5] Appellate courts review decisions rendered by TERC for errors appearing on the record.[12] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[13]

## V. ANALYSIS

### 1. Use of PTA Statistics

Franklin County first assigns as error TERC's reliance on the statistics prepared by the PTA.

#### (a) Reliance on PTA Values Rather Than County Values

Franklin County first argues that TERC relied solely on the values provided by the PTA and not the values certified by Franklin County and that the Franklin County values and underlying sales files were not made available to TERC.

Franklin County is misconstruing the applicable statutes. As Franklin County argues, TERC is required by § 77-5022 to "annually equalize the assessed value or special value of all real property as submitted by the county assessors on the abstracts of assessments." But contrary to Franklin County's contention, TERC is not required to use only the abstract provided by the county to equalize that value.

The PTA is statutorily required, under § 77-5027, to provide to TERC the very information it provided to TERC in

---

[12] Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2016). See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, 285 Neb. 120, 825 N.W.2d 447 (2013).

[13] *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal., supra* note 12.

this case. That section also authorizes the PTA to make non-binding recommendations regarding valuation to TERC. And TERC is to use all information provided at its hearing to make its determination.

Information was provided to TERC by both the PTA and Franklin County. The record shows that TERC considered all the information and concluded that an upward increase of 8 percent on grassland was warranted. TERC did not err in considering the PTA's figures.

### (b) Presumption of Correctness

Franklin County also argues that its figures were entitled to a presumption of correctness under 350 Neb. Admin. Code, ch. 12, § 003.04 (2009). Franklin County is correct insofar as this regulation requires that its figures, as entered into the state sales record by an assessor, are presumed to be correct.

But it is not the figures entered by Franklin County that were challenged. Those figures were used by both Franklin County and the PTA in determining the appropriate valuation. It is the comparable sales outside of Franklin County that are at issue. That regulation is simply not relevant in this case.

### (c) Comparable Sales Standard

Finally, Franklin County argues that TERC should not have accepted the PTA's comparable sales from counties further than 12 miles from Franklin County because of the recent change in policy. This contention is also without merit.

The PTA acknowledges that a different policy generally providing for use of comparable sales no more than 6 miles from a county's border was previously in place. The PTA further acknowledges that a new policy—that the PTA could use any comparable sale so long as "the proximity to the county and the comparability to the county"—was effective beginning in January 2016, but was not published on its website until April 11, 2016, just prior to the show cause hearing in this case.

But this standard is not a rule or statute, and is not explicitly applicable to county assessors. Rather, it is a policy directed at the PTA. This is consistent with the statutory obligation on the part of the PTA to determine the level of value and quality of assessment in all counties.[14]

Moreover, Franklin County suggests that the prior policy was a fixed 6-mile rule. In fact, the prior standard was flexible in allowing the use of sales outside of 6 miles. This is evidenced by Dallman's testimony that she utilized sales up to 12 miles from Franklin County's border. This argument, and in turn Franklin County's first assignment of error, is without merit.

## 2. Lack of Proportionality

In its second assignment of error, Franklin County contends that TERC violated Neb. Const. art. VIII by failing to uniformly and proportionally value grasslands in the state. This assertion is not supported by evidence in the record. Franklin County refers us to several figures suggesting a difference in grassland valuation between the counties, but offers no explanation beyond a list of those numbers. As TERC notes, there are any number of reasons explaining why a particular valuation is what it is, and without context to a value, a list of numbers indicates nothing.

There is no merit to Franklin County's second assignment of error.

## 3. Remaining Assignments of Error

Franklin County also assigns that TERC erred in the upward adjustment of its level of value. We review decisions rendered by TERC for errors appearing on the record,[15] and consider whether the decision conforms to the law, is supported

---

[14] See § 77-5027.

[15] § 77-5019(5). See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal.*, *supra* note 12.

by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[16]

We have concluded that TERC did not err in utilizing the PTA's statistics. TERC's decision conformed to the law. There was evidence in the record supporting TERC's adjustment, and its decision was not arbitrary, capricious, or unreasonable. As such, we cannot find error in TERC's upward adjustment. Nor did TERC err in denying Franklin County's motion to reconsider.

## VI. CONCLUSION

TERC's order adjusting the Franklin County grassland value upward by 8 percent is affirmed.

AFFIRMED.

---

[16] See *JQH La Vista Conf. Ctr. v. Sarpy Cty. Bd. of Equal., supra* note 12.